MARY L. CASSANI & another *vs*. PLANNING BOARD OF
HULL.

Plymouth.    January 16, 1973. — August 30, 1973.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Subdivision Control.    Equity Pleading and Practice*, Appeal.    *Words*,
"Approval."

An endorsement "Approval under Subdivision Control Law not re-
quired," once made upon a plan by a municipal planning board
pursuant to G. L. c. 41, § 81P, cannot be rescinded by the
board. [456-458]
An appeal does not lie from the findings, rulings and order for decree by
the judge in a suit in equity. [458-459]

BILL IN EQUITY filed in the Superior Court on November
26, 1971.

The suit was heard by *Chmielinski, J.*

*George C. Caner, Jr.,* for the plaintiffs.

*Haskell A. Lampke,* Town Counsel, for the Planning
Board of Hull.

ARMSTRONG, J.    This bill in equity is an appeal under
G. L. c. 41, § 81BB, or alternatively a bill for declaratory
relief under G. L. c. 231A, seeking a determination of the
invalidity of an action of the defendant planning board
(board) in the administration of the Subdivision Control
Law (G. L. c. 41, §§ 81K-81GG).

On May 10, 1971, the board, pursuant to § 81P, had
accorded to each of two land division plans submitted by
one of the plaintiffs the endorsement "Approval under
Subdivision Control Law not required." On November 9,
1971, the board, without notice or hearing, purported to
rescind that endorsement. The plaintiffs, who are the
record and beneficial owners respectively of the land in
question, brought their bill to nullify the purported rescis-

sion. The trial judge ruled that the planning board did not exceed its authority in rescinding its earlier endorsement, and entered a final decree dismissing the bill of complaint. The plaintiffs appeal from "the court's findings of fact, rulings of law and order for decree," and from the final decree. The evidence is reported.

The plaintiffs take the position that the planning board was required as a matter of law to endorse the plans in accordance with the provisions of § 81P,[1] because neither plan showed a "subdivision" as that word is defined in § 81L. They contend that each lot shown in the division plans complies with the area and frontage requirements of the zoning by-law of the town of Hull. The planning board takes the position that it was entitled to withhold its endorsement because certain lots shown on the division plans were, in fact, back lots, connected to a public way by a long, narrow strip of land which flared out at the street in

---

[1] Section 81P, as most recently amended by St. 1963, c. 363, § 1, reads:

"Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it the words 'approval under the subdivision control law not required' or words of similar import with appropriate name or names signed thereto, and such endorsement shall be conclusive on all persons. Such endorsement shall not be withheld unless such plan shows a subdivision. If the board shall determine that in its opinion the plan requires approval, it shall within fourteen days of such submittal, give written notice of its determination to the clerk of the city or town and the person submitting the plan, and such person may submit his plan for approval as provided by law and the rules and regulations of the board, or he may appeal from the determination of the board in the manner provided in section eighty-one BB. If the board fails to act upon a plan submitted under this section or fails to notify the clerk of the city or town and the person submitting the plan of its action within fourteen days after its submission, it shall be deemed to have determined that approval under the subdivision control law is not required, and it shall forthwith make such endorsement on said plan, and on its failure to do so forthwith the city or town clerk shall issue a certificate to the same effect. The plan bearing such endorsement or the plan and such certificate, as the case may be, shall be delivered by the planning board, or in case of the certificate, by the city or town clerk, to the person submitting such plan. The planning board of a city or town which has authorized any person, other than a majority of the board, to endorse on a plan the approval of the board or to make any other certificate under the subdivision control law, shall transmit a written statement to the register of deeds and the recorder of the land court, signed by a majority of the board, giving the name of the person so authorized.

"The endorsement under this section may include a statement of the reason approval is not required."

an attempt to satisfy the frontage requirement of the zoning by-law; that these lots would merely be connected to, but not front on, a public way; and that therefore the plans were "subdivision" plans requiring planning board approval.

The board takes the further position that although it gave its endorsement on May 10, 1971, it was empowered, upon changing its mind, to rescind that endorsement. The letter purportedly rescinding the endorsement was dated November 9, 1971, and was issued without notice to the plaintiffs or opportunity for them to be heard.

Because we are of the opinion that the board lacked the power to rescind its endorsement, even if it can be said as a matter of law that the plans showed a subdivision, we do not reach the important substantive issue of whether the board acted erroneously in originally giving the plans its endorsement under § 81P.

The powers of a planning board to amend or rescind its actions with respect to subdivision plans are set out in G. L. c. 41, § 81W, as appearing in St. 1953, c. 674, § 7.[2] Section

---

[2] *"Section 81 W.* A planning board, on its own motion or on the petition of any person interested, shall have power to modify, amend or rescind its approval of a plan of a subdivision, or to require a change in a plan as a condition of its retaining the status of an approved plan. All of the provisions of the subdivision control law relating to the submission and approval of a plan of a subdivision shall, so far as apt, be applicable to the approval of the modification, amendment or rescission of such approval and to a plan which has been changed under this section.

"No modification, amendment or rescission of the approval of a plan of a subdivision or change in such plan shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon.

"So far as unregistered land is affected, no modification, amendment or rescission of the approval of a plan nor change in a plan under this section shall take effect until (1) the plan as originally approved, or a copy thereof, and a certified copy of the vote of the planning board making such modification, amendment, rescission or change, and any additional plan referred to in such vote, have been recorded, (2) an endorsement has been made on the plan originally approved as recorded referring to such vote and where it is recorded, and (3) such vote is indexed in the grantor index under the names of the owners of record of the land affected. So far as registered land is affected, no modification, amendment or rescission of the approval of a plan nor change in a plan under this section shall take effect, until such modification, amendment or change has been verified by the land court pursuant to chapter one hundred and eighty-five, and in case of rescission, or modification, amendment or change not so verified, until ordered by the court pursuant to section one hundred and fourteen of said chapter one hundred and eighty-five."

81W only authorizes rescission with respect to plans which have previously received planning board "approval". A recent decision appears to have suggested that there is uncertainty as to whether "approval" as used in § 81W refers only to an actual approval by the planning board, or whether it also includes a constructive approval resulting from failure to act within sixty days as required by the fourth paragraph of § 81U. See *Stoner* v. *Planning Board of Agawam,* 358 Mass. 709, 715 (1971). Cf. *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 128-129 (1964); *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow,* 355 Mass. 165, 169-170 (1969). But there is no uncertainty as to whether or not the word "approval" as used in § 81W includes an endorsement under § 81P that such approval is not required. Such an endorsement is not regarded as an "approval" as that term is used in the Subdivision Control Law. *Goldman* v. *Planning Board of Burlington,* 347 Mass. 320, 324 (1964).

The Subdivision Control Law is not drafted in generalities. The draftsmanship is detailed, specific, and careful. With respect to the question before us, it is not in any way ambiguous. For example, § 81X, set out in relevant part in the margin,[3] illustrates the sharp differentiation made in

---

[3] Section 81X, as most recently amended by St. 1967, c. 248, reads in relevant part:

"No register of deeds shall record any plan showing a division of a tract of land into two or more lots, and ways, whether existing or proposed, providing access thereto, in a city or town in which the subdivision control law is in force unless (1) such plan bears an endorsement of the planning board of such city or town that such plan has been approved by such planning board, and a certificate by the clerk of such city or town, is endorsed on the plan, or is separately recorded and referred to on said plan, that no notice of appeal was received during the twenty days next after receipt and recording of notice from the planning board of the approval of the plan, or, if an appeal was taken, that a final decree has been entered by the court sustaining the approval of the plan, or (2) such plan bears an endorsement of the planning board that approval of such plan is not required, as provided in section eighty-one P, or (3) the plan is accompanied by a certificate of the clerk of such city or town that it is a plan which has been approved by reason of the failure of the planning board to act thereon within the time prescribed, as provided in sections eighty-one U and eighty-one V, or that it is a plan submitted pursuant to section eighty-one P and that it has been determined by failure of the planning board to act thereon within the prescribed time that approval is not required, and a reference to the book and page where such certificate is recorded is made on said plan; and, unless, in case of plans approved, the endorsement or certificate is dated within six months of the date of the recording, or there is also endorsed thereon or recorded therewith and referred to thereon a certificate of the

the Subdivision Control Law between the concepts of an endorsement of approval under § 81U and an endorsement that approval is not required under § 81P. The several sections of the Subdivision Control Law making reference to the power to rescind: namely, §§ 81W, 81X and 81DD, do not refer to the power to modify, amend or rescind a "decision", or "determination", or "endorsement". Nor is the object of a "modification, amendment or rescission" left to implication. Rather, the form of phrase repeatedly used is "the modification, amendment or rescission of the approval of a plan."

The same result is reached by comparing parallel sentences appearing in §§ 81P and 81X concerning conclusiveness of decisions. Section 81X, governing the recording of plans, after making reference to several types of endorsements, including endorsements of approval and endorsements that approval is not required, states: "The contents of any such endorsement of the planning board or certificate by the clerk of the city or town shall be final and conclusive on all parties, subject to the provisions of section eighty-one W." By contrast, § 81P, making reference to only one type of endorsement, namely, an endorsement that approval is not required, states: "... and such en-

_____

planning board or city or town clerk, dated within thirty days of the recording, that the approval has not been modified, amended or rescinded, nor the plan changed. Such certificate shall upon application be made by the board or by the clerk unless the records of the board or clerk receiving the application show that there has been such modification, amendment, rescission or change. The planning board of the city or town which has authorized any person, other than a majority of the board, to endorse on a plan the approval of the board or to make any other certificate under the subdivision control law, shall transmit a written statement to the register of deeds and the recorder of the land court, signed by a majority of the board, giving the name of the person so authorized.

"The contents of any such endorsement of the planning board or certificate by the clerk of the city or town shall be final and conclusive on all parties, subject to the provisions of section eighty-one W.

. . .

"No register of deeds or recorder of the land court shall accept for record a notice of modification, amendment or rescission of approval of a plan of a subdivision unless such notice contains a statement by the planning board that such modification, amendment or rescission does not affect any lot or rights appurtenant thereto in such subdivision which lot was conveyed or mortgaged in good faith and for valuable consideration subsequent to the approval of the subdivision plan."

dorsement shall be conclusive on all persons." Unlike § 81X, in which "conclusive" is modified by "subject to the provisions of section eighty-one W", in § 81P the word "conclusive" is not modified or limited in any way.

Only one conclusion seems warranted: that when § 81W grants the power to rescind an "approval", it means just that. It does not authorize a planning board to rescind an endorsement that approval is not required.

Nor do we feel that the existence of such authority can, apart from § 81W, be inferred from general principles of administrative law. There is much confusion in the law as to whether and to what extent administrative bodies are empowered to modify their own decisions or correct their own mistakes. See e.g., Davis, Administrative Law (1958), § 18.09. Recent Massachusetts cases touching on the problem include *Fortier* v. *Department of Public Utilities,* 342 Mass. 728, 731-733 (1961); *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 552-553 (1962); *Goldman* v. *Planning Board of Burlington,* 347 Mass. 320, 325 (1964); *Fish* v. *Building Inspector of Falmouth,* 357 Mass. 774, 775 (1970); *Shuman* v. *Board of Aldermen of Newton,* 361 Mass. 758, 764-765 (1972); and *Potter* v. *Board of Appeals of Mansfield, ante,* 89, 95-97 (1973). The present case does not involve merely the later correction of an inadvertent error. It involves the reversal of a conscious decision, and the substitution therefor, over six months later, of a "determin[ation] that in its opinion the plan requires approval . . .." Section 81P. See *Potter* v. *Board of Appeals of Mansfield, supra,* at 96. That such a determination may involve difficult questions of judgment may be seen not only from the facts of this case, but from those of *Carey* v. *Planning Board of Revere,* 335 Mass. 740, 742 (1957).

Section 81P gives a planning board fourteen days in which to make its determination as to whether approval is or is not required. If it has not acted within that time, it is deemed to have determined that approval is not required, and the person who submitted the plan is thereafter entitled, as of right, to an endorsement by or on behalf of

the planning board so stating. *Carey* v. *Planning Board of Revere,* 335 Mass. 740, 743 (1957). The endorsement is declared by § 81P to be conclusive "on all persons," a phrase which obviously does not exclude the planning board itself.[4] With such a statutory provision, we cannot easily reconcile a contention that after the fourteen days has expired the planning board retains power to determine that approval is required. On the contrary, the imputation of such a power would not seem to us to be consistent with the "intention . . . of the Subdivision Control Law . . . to set up an orderly procedure for definitive action within stated times . . . so that all concerned may rely upon recorded action or the absence thereof within such times." *Board of Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 125 (1964). It cannot be assumed that the Legislature, having in § 81W placed elaborate limitations on the power to rescind an approval of a plan in order to protect those who have relied on that approval, would sanction the existence of a power, free of such limitations and protections, to rescind an endorsement that approval is not required.

We do not disagree with the contention of the planning

---

[4] The power of judicial review of a determination under § 81P that approval is not required is uncertain. *Carey* v. *Planning Board of Revere,* 335 Mass. 740 (1957) involved two bills in equity to review such a determination constructively made. The first, an appeal under § 81BB (as to which a 20-day time limit applies), failed because adequate notice was not received by the city clerk. *Carey* v. *Planning Board of Revere,* 335 Mass. 746 (1957). The second, a petition under § 81Y (available within a year of the "act or failure to act" sought to be reviewed) appears to have been regarded by the court as not raising the issue of the substantive correctness of the constructive determination that approval was not required, the principal question sought to be reviewed by the petitioners. 335 Mass. 740, 743. However, in *Bloom* v. *Planning Board of Brookline,* 346 Mass. 278, 283 (1963) the court, speaking through the same justice, stated, "We assume that under § 81Y a bill to correct or expunge an indorsement on a recorded plan could be maintained in some circumstances and that this is not affected by the right given by § 81BB to those aggrieved to appeal within twenty days from a decision of the board or its failure to take final action on a plan. The plaintiffs, however, do not show or suggest that there is in this case any substantive ground for such relief." If the words "We assume . . ." mean "We assume without deciding . . .", it would appear to be still open to a planning board to deny that its endorsement under § 81P is a judicially reviewable act, and to contend that no person has an enforceable right to require a planning board to withhold such an endorsement. The question need not be answered here, for even if the planning board's determination that approval is not required is subject to reversal by judicial review, that does not necessarily imply that it is subject to reversal by the planning board acting *sua sponte. Potter* v. *Board of Appeals of Mansfield, supra.*

board that it ought to have the power to rescind a determination under § 81P that approval is not required in order better to protect the public interest in preventing subdivisions without adequate provision for access, sanitation and utilities. But if such a power is to be found, it must be found in the Subdivision Control Law, which is a "comprehensive statutory scheme" (*Costanza & Bertolino, Inc.* v. *Planning Board of North Reading,* 360 Mass. 677, 679 [1971]), and not in our personal notions of sound policy. As the statute is clear, we are not at liberty to interpose such notions, but must apply the statute as the Legislature wrote it.

The proper form of final decree which should be entered in this case involves a further question. The bill in equity stands on alternative grounds: (1) an appeal under § 81BB, seeking annulment of the planning board's "decision" of November 9, 1971, and (2) a petition for declaratory relief under G. L. c. 231A, seeking a declaration that the November 9 action is invalid, and that the original endorsements that approval is not required are valid and in effect. By its own terms, § 81BB provides an exclusive remedy in cases to which it applies. The parties do not argue this question; nor has any suggestion been made that the procedural requirements under either statute have not been met in this case. Consequently it would seem inappropriate to determine a question which might be of significance in some future case — for example, a case where an appeal is not taken within the twenty-day time period specified by § 81BB.

Section 81BB authorizes the court either to annul the decision, or to "make such other decree as justice and equity may require." A decree declaring an action to be beyond the authority of a board, and therefore void, is as efficacious as one annulling the action. The difference is in the form of words only. It is not necessary to determine whether the declaration is pursuant to G. L. c. 41, § 81BB or to G. L. c. 231A.

The appeal from the trial judge's findings, rulings, and order for decree must be dismissed. "In the equity practice

of this Commonwealth, interlocutory and final decrees, but no other judicial acts, are appealable." *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 187 (1943).

The final decree is reversed. A new final decree is to enter declaring that the actions of the defendant taken on November 9, 1971, purporting to rescind the earlier endorsements that approval is not required, were in excess of the authority of the defendant, and are null and void, and that the earlier endorsements are unaffacted by them.

*So ordered.*